## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

AMANDA LAWSON-ROSS AND
TRISTIAN BYRNE,

        **Plaintiffs,**

        **v.**                    **Case No. 1:17-CV-00253-MW-GRJ**

GREAT LAKES HIGHER EDUCATION
CORP.,

        **Defendant.**

_____

### DEFENDANT GREAT LAKES HIGHER EDUCATION CORPORATION'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Pursuant to F.R.C.P. 12(b)(1) and (6), Defendant Great Lakes Higher Education Corporation ("Great Lakes") files its Motion to Dismiss Plaintiffs' First Amended Complaint (the "Motion").

## I.      INTRODUCTION

Plaintiffs' First Amended Complaint ("FAC") should be dismissed for several independent reasons. First, Plaintiffs' claims are all based on alleged violations of the Higher Education Act's ("HEA") disclosure requirements, though they are styled as state-law tort, contract, and consumer protection claims. Such claims, however styled, are expressly preempted by the HEA.

Second, such claims are barred because Plaintiffs failed to exhaust their administrative remedies by availing themselves of the Department of Education's (the "DOE") comprehensive scheme for addressing the claims at issue in the FAC.

Third, Plaintiffs cannot establish the elements of their claims. Plaintiffs cannot allege that Great Lakes owes them any fiduciary duties (Count I). Nor can Plaintiffs establish the existence of a duty rooted in tort (Count II). As for their unjust enrichment and "implied-in-law contract" claims (Counts III and IV), Plaintiffs have not alleged any inequitable conduct or that Great Lakes received any improper benefit which could be recouped by such claims. The facts pled in support of the consumer protection claim (Count V) are conclusory and thus do not support that claim.

Finally, if any of Plaintiffs' claims survive, this Court must dismiss the class claims of any non-Florida residents for want of personal jurisdiction.[1] Specifically, the U.S. Supreme Court recently held that "plaintiffs cannot join their claims [] and sue []in a State in which only some of them have been injured." *Bristol-Myers Squibb v. Super. Ct. of Cal.*, 582 U.S. ——, 137 S. Ct. 1773, 1788-89 (2017) (Sotomayor, J., dissenting) (construing majority opinion).

## II.  STATEMENT OF FACTS

### A.  Lawson-Ross's Allegations

---

[1] If this case is not dismissed entirely, Defendant reserves the right to raise other challenges to the class during the class certification briefing.

In 2007, Lawson-Ross took on student loan debt under the HEA to fund her graduate level education, where she ultimately acquired a Ph.D. in counseling psychology from the University of Akron in Ohio. FAC, Doc. No. 24 at ¶¶ 39-41. Following graduation, she worked in several university-level positions in various psychology departments in Florida. *Id.* at ¶ 39.

Lawson-Ross claims she "undertook student loans to complete her education with the expectation that those loans would be forgiven under the [Public Student Loan Forgiveness Program, 20 U.S.C. § 1087e(m); 34 C.F.R. § 685.219 (the "PSLF Program")]." *Id.* at ¶ 40. Lawson-Ross alleges that she "contacted Great Lakes regularly with the purpose of ensuring that she was on track to receive the benefits of the PSLF." *Id.* at ¶ 41. She further alleges that, "[u]ntil July 2017, she was repeatedly and explicitly told by Great Lakes representatives that she was on track to benefit under the PSLF, that her loans qualified under that program, and that she would not need to complete any additional forms until her 10 years of public service was completed." *Id.* at ¶ 42.

In July 2017, a Great Lakes customer service representative, identified as "Nicole," allegedly informed Lawson-Ross that the majority of her loans were not eligible for the PLSF Program. *Id.* at ¶ 44. The representative informed her that only loans dispersed pursuant to the William D. Ford Federal Direct Loan Program, 20 U.S.C. § 1087a, *et seq.* ("Direct Loans"), are eligible for forgiveness

under the PSLF Program. *Id.* The majority of Lawson-Ross's student loans, however, were dispersed under the Federal Family Education Loan Program, 20 U.S.C. §§ 1071, *et seq.* (the "FFEL Program"), which are not eligible for PSLF forgiveness. *Id.*

### B.     Byrne's Allegations

Byrne, graduated from Kaplan University, with an associate's degree in "Applied Science in Criminal Justice." *Id.* at ¶ 48. Byrne took out student loans under the HEA. *Id.* After graduation, she worked for the Sheriff's Department of Pinellas County, Florida. *Id.* at ¶ 49. Byrne alleges that she did not learn of the federal government's PSLF Program until January 2016. *Id.* at ¶ 49. At that time, Byrne allegedly contacted Great Lakes, explained that she worked for the sheriff's department, "and inquired . . . as to whether she would qualify [for the PSLF Program]." *Id.* "Great Lakes [allegedly] told [her] that all she needed to qualify [for PSLF] was to be working full time and to have the human resources department fill out an application and to apply for income-based payments." *Id.* at ¶ 50. Byrne claims to have later applied for PSLF forgiveness. *See id.* at ¶¶ 50-54.

In September 2017, Byrne alleges that she "was informed that . . . she did not qualify for PSLF because she did not have Direct Loans[.]" *Id.* at ¶ 54. Specifically, the DOE informed Byrne that only loans dispersed pursuant to the Direct Loans Program are eligible for forgiveness under the PSLF Program. *Id.*

Accordingly, because all of Byrne's student loans were dispersed under the FFELP, they are not eligible for PSLF forgiveness. *Id.* Byrne claims that, had Great Lakes informed her of this issue, "she could have addressed the situation to make sure she was eligible for PSLF." *Id.* at ¶ 55.

* * *

Lawson-Ross and Byrne filed this putative class action against Great Lakes. *See* [Doc. No. 24]. They seek individual and class damages for a putative nationwide class. *See id.* at ¶¶ 13-24, 57-71. Specifically, they allege five causes of action: (1) Breach of Fiduciary Duties; (2) Negligence; (3) Unjust Enrichment; (4) Breach of Implied-In-Law Contract (*i.e.*, unjust enrichment); and (5) Violations of the Florida Consumer Collections Protection Act, Fl. Stat. § 559.55, *et seq.*, (the "FCCPA"). *See* [Doc. No. 24] at ¶¶ 72-102. Each should be dismissed.

## III.   ARGUMENT

### A.   The HEA Preempts Plaintiffs' Claims

Plaintiffs' FAC should be dismissed in its entirety because each of their state law claims, however styled, are premised on alleged violations of the HEA, which does not authorize a private right of action against federal student loan servicers. Courts, including the Eleventh Circuit, have held that the HEA is "not tantamount to an expression of legislative intent in favor of equipping students with a private right of action against . . . participants in the [federal student loan] programs."

-5-

*McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1222 (11th Cir. 2002). "[I]t is well-settled that the HEA does not expressly provide debtors with a private right of action." *Bennett v. Premiere Credit of N. Am., LLC*, 504 Fed. App'x 872, 875 (11th Cir. 2013); *see* 20 U.S.C. § 1082(a)(2).

To get around this lack of a federal private right of action, borrowers have repeatedly sued loan servicers on state statutory and common law theories, such as negligence. They base such lawsuits on alleged failures to make certain disclosures to borrowers. Such claims, however, are expressly preempted by federal law. 20 U.S.C. § 1098g. Specifically, under the HEA, "[l]oans made, insured, or guaranteed pursuant to a program authorized by Title IV of the Higher Education Act of 1965 [*e.g.*, the FFELP and the Direct Loans Program] . . . ***shall not be subject to any disclosure requirements of any State law***." *Id.* (emphasis added).

As a result, courts have repeatedly and consistently dismissed disclosure-based state-law claims against student loan servicers on preemption grounds. *Brown v. Louisiana Office of Student Fin. Assistance*, 2007 WL 2296543, at *1–2 (N.D. Tex. Aug. 10, 2007) ("[T]he Browns' various state claims also fail as a matter of law because violations of the HEA do not give rise to a breach of contract action or any tort. Plaintiffs assert causes of action for breach of contract, breach of fiduciary duty, negligence, and gross negligence[,] all of which arise from alleged violations under the HEA. These claims will not defeat dismissal for

lack of private right of action."); *Anyakora v. Sallie Mae Corp.*, 255 Fed. App'x 457, 458 (11th Cir. 2007) (affirming the dismissal of plaintiff's HEA claim, and also the "dismiss[al] [of] his 'peripheral' theories of 'fraud, racketeering, discrimination, negligence, denial of due process, § 1983, etc.,' based on [the] conclusion that these were simply HEA violations pled in other terms, and therefore precluded under *McCulloch*."); *N.Y. Inst. of Dietetics, Inc. v. Great Lakes Higher Educ. Corp.*, 1995 WL 562189, at *4 (S.D.N.Y. Sept. 21, 1995) (holding that alleged Title IV "violations cannot form the basis for a RICO claim"); *McCulloch*, 298 F.3d at 1222-24 (same).

Preemption of state law is necessary because extensive federal regulations mandate the disclosures servicers must make to consumers. *See*, *e.g.*, 20 U.S.C. § 1082(a)(1); 34 C.F.R. § 682.205 ("Disclosure requirements for lenders"). The HEA and its implementing regulations reflect Congress's intent for national uniformity in HEA disclosure requirements. *See id.* This leaves no room for private litigation which can result in an *ad hoc* and unpredictable application of state-law disclosure requirements across the nation. *See*, *e.g.*, 20 U.S.C. § 1098g (denying states the ability to impose or enforce HEA or state disclosure requirements); 34 C.F.R. § 682.700 (outlining Secretary's exclusive enforcement authority); *accord McCulloch*, 298 F.3d at 1224. Thus, consumers may not enforce the HEA through private litigation no matter what legal label they attach to their claims.

This conclusion is underscored by at least three cases nearly identical to this one: (i) *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010), (ii) *Linsley v. FMS Inv. Corp.*, 2012 WL 1309840 (D. Conn. 2012), and (iii) *Nelson v. Great Lakes Ed. Corp.*, 2017 WL 6501919 (S.D. Ill. Dec. 19, 2017). In each, a plaintiff alleged HEA violations masquerading as a state-law claim. Each case was dismissed.

In *Chae*, the Ninth Circuit rejected similar claims as expressly preempted by Section 1098g. 593 F.3d at 941-43 (affirming dismissal of state consumer protection claims against student loan servicer). Disregarding the label applied to the claims, the Ninth Circuit held that, "[a]t bottom, the plaintiffs' misrepresentation claims are improper-disclosure claims" and "the state-law prohibition on misrepresenting a business practice 'is merely the converse' of a state-law requirement that alternate disclosures be made." *Id.*

In *Linsley*, the court held that the claims were preempted where the plaintiff's "misrepresentation claim [was] predicated on [defendant's] failure to properly disclose the HEA's requirements for loan consolidation and rehabilitation." 2012 WL 1309840 at *6. Accordingly, the court held that "Linsley, [like] *Chae*, may not avoid preemption by relabeling his otherwise-preempted claim as one of misrepresentation and not improper disclosure." *Id.*

Finally, in *Nelson*, the court held that claims for breach of fiduciary duty and state common law-imposed "disclosure requirements" are preempted by Section

1098g of the HEA. *Nelson*, 2017 WL 6501919, at *3. The court held that "Congress intended § 1098g to preempt ***any*** state law requiring lenders to reveal facts or information not required by federal law."[2] *Id.* (emphasis added).

Here, Plaintiffs attempt to do the same thing. For example, Plaintiffs' breach of fiduciary duty claim is based on the allegation that "Great Lakes has a fiduciary duty to its customers to provide accurate information regarding loan options." [Doc. No. 24] at ¶ 74. Their negligence claim is based on the same "duty." *Id.* at ¶ 79. The unjust enrichment and "implied-in-law contract" claims are based on Great Lakes' alleged failure to fulfill its HEA-imposed "duties." *Id.* at ¶¶ 84, 89. The FCCPA claim is based on the conclusory allegation that Great Lakes attempted "to enforce a debt," which it "knows . . . is not legitimate . . . ." *See id.* at ¶¶ 98-102. Because no other allegations support this claim, the Court can only assume it is based on Plaintiffs' belief that their loans would have been forgiven "but for" Great Lakes' alleged failure-to-disclose. *See id*; [Doc. No. 24] at ¶¶ 25-59, 72-102.

Plaintiffs cannot successfully "restyle[] [their] improper-disclosure claims" to avoid dismissal. The HEA is clear—Plaintiffs cannot enforce ***any*** disclosure

---

[2] Indeed, in 1994, the Secretary ***removed*** the requirement for lenders to disclose to borrowers that a consolidation program to change FFELP loans into Direct Loans (that are eligible for PSLF) exists.  This further evidences the Secretary's intent not to mandate disclosures related to consolidation loans and counsels against a recognition of additional state-law disclosure requirements. *See* Federal Family Education Loan Program, 59 Fed. Reg. 61210-01 (1994) ("The Secretary has deleted the provision under § 682.205(a)(2)(ix) [i.e., "Disclosure Requirements for Lenders"] that requires lenders to respond to borrower inquiries regarding the Consolidation Loan application process and to provide information on consolidation loan terms and conditions."); *accord* Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 78 Fed. Reg. 65768-01, 65796 (2013).

requirements required by federal law or state law. *See*, *e.g.*, *Chae*, 593 F.3d at 943; *accord* 20 U.S.C. § 1082(a)(2); 34 C.F.R. § 682.205(a)(2)(vii); *see also Bennett*, 504 Fed. App'x at 875; *McCulloch*, 298 F.3d at 1224. Thus, their state law claims are preempted and must be dismissed.[3]

## B.   Plaintiffs Failed to Exhaust Their Administrative Remedies

The FAC should also be dismissed in its entirety because Plaintiffs failed to exhaust their "exclusive [administrative] remedy."[4] *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1227 (D.C. Cir. 1991). The HEA provides administrative remedies for consumers who believe their loan servicer has failed to disclose something in violation of the HEA. It allows consumers to file a complaint against their loan servicer with the DOE (*see* http://www2.ed.gov/about/offices/list/oig/hotline.html). In response to a complaint (or of her own initiative), the Secretary can provide consumers with the same remedies sought in this action. *See*, *e.g.*, 34 C.F.R. § 682.709. The Secretary has the right to seek redress from a lender or servicer either informally or formally

---

[3] Dismissal under Rule 12(b)(6) is proper when an affirmative defense "clearly appears on the face of the complaint" – for example, if the "complaint itself demonstrates" that the claims are preempted, then dismissal is proper. *See*, *e.g.*, *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd*, 764 F.2d 1400 (11th Cir. 1985) (en banc); *accord Green v. Charter One Bank, N.A.*, No. 08 C 1684, 2010 WL 1031907, at *1 (N.D. Ill. Mar. 16, 2010) ("A complaint that, on its face, establishes federal preemption is properly dismissed pursuant to Rule 12(b)(6)." (relying on *Currie v. Diamond Mortgage Corp. of Ill.*, 859 F.2d 1538, 1542 (7th Cir. 1988)).

[4] "The Eleventh Circuit found that, although it is not specifically named, a motion concerning exhaustion of administrative remedies should be treated like a FRCP 12(b) motion." *Keahl v. Appiah*, No. 4:13CV662-MW/GRJ, 2014 WL 4248139, at *1 (N.D. Fla. Aug. 27, 2014). "That motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b) is not unusual or problematic.... We regard exhaustion of administrative remedies as a matter of judicial administration." *A.L. ex rel. P.L.B. v. Jackson Cty. Sch. Bd.*, No. 5:13-CV-85-RS-GRJ, 2013 WL 5421944, at *1 (N.D. Fla. Sept. 26, 2013).

relating to a consumer's complaint. *See* 34 C.F.R. § 682.703.[5]

The U.S. Supreme Court has held that, "where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993). The Eleventh Circuit has held that federal court "is not the appropriate forum" for a debtor to contest whether she owes student loan debt. *See Bennett*, 504 F. App'x at 879. Instead, a debtor contesting the validity of federal student loan debt is required to use "the available administrative rights, procedures, and remedies provided under the [Higher Education Act]." *Id.*

"Where a statute provides an administrative enforcement mechanism, it is presumed that Congress did not mean to create a private right of action." *McCulloch*, 298 F.3d at 1222-23 (holding that, when a "statute provides administrative remedies," as the HEA does, "there is a presumption that Congress did not intend to create a private right of action, but rather provided precisely the remedies it considered appropriate"); *Williams v. Nat'l School of Health Tech.*, 836 F. Supp. 273, 279 (E.D. Pa. 1993)), *aff'd*, 37 F.3d 1491 (3rd Cir. 1994); 20 U.S.C. § 1094(c)(3); 34 C.F.R. §§ 682.700-712; *accord*; *Anyakora*, 255 Fed. App'x at 458

---

[5] When the Secretary "receives information, determined by the Secretary to be reliable," that a third-party servicer is violating the HEA, the Secretary shall limit, suspend, or terminate the servicer from the federal student loan program, or institute a formal emergency action against the servicer to redress such violations. *See* 20 U.S.C. § 1094(c)(1)(H) & (I); 34 C.F.R. §§ 682.700, et seq.

114073297.1

(affirming dismissal of fraud, racketeering, discrimination, negligence, and due process claims because they were "simply HEA violations pled in other terms").

Any alternate construction of the HEA would defeat the purpose of Congress' regulatory scheme. For instance, if this Court allows Plaintiffs' FAC (and others like it) to be litigated on the merits, the federal government's ability to exercise its exclusive authority as regulator of – and lender/reinsurer to – the student loan program would be seriously impeded. Moreover, enforcement of state-law disclosure requirements could lead to one servicer, or all servicers in one jurisdiction, being subjected to a different set of disclosure standards than those mandated by the federal government. Such interference and disruption is precisely what the administrative procedure process is meant to avoid.

Plaintiffs' state-law claims are nothing more than a thinly-veiled assertion that Great Lakes failed to comply with the HEA. As such, before filing this lawsuit, Plaintiffs should have used the federal administrative complaint process designed by Congress. *Reiter v. Cooper*, 507 U.S. 258, 269 (1993). If that complaint was not properly resolved by the DOE, Plaintiffs' only remedy would be to sue the DOE Secretary, *not Great Lakes,* for redress in federal court. *See*, *e.g.*, 20 U.S.C. § 1082(a)(2). Because they did not take any of these steps, Plaintiffs failed to exhaust their administrative remedies and the FAC must be dismissed.

114073297.1

### C.      Great Lakes is Not Plaintiffs' Fiduciary

Even if the FAC is not dismissed in its entirety, Plaintiffs' breach of fiduciary duty claim should be dismissed because Great Lakes is not their fiduciary. In Florida, "[t]he elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *See*, *e.g.*, *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). To allege a fiduciary relationship, there must be some factual allegation of (i) dependency by one party upon the other and (ii) a voluntary assumption of a duty by the other party. *Cripe v. Atlantic First Nat'l Bank*, 422 So.2d 820 (Fla. 1982); *Willis v. Fowler*, 102 Fla. 35 (1931); *Quinn v. Phipps*, 93 Fla. 805 (1927). Plaintiffs' FAC fails to allege facts establishing either element.

Plaintiffs failed to allege that they are "dependent" upon Great Lakes for information about the options available to them for either repaying their loans or having them forgiven. They do not allege that Great Lakes was the *only* one who could inform them about their options. Nor can they. The DOE's student loan webpage lists each of the available repayment options for student borrowers and provides dozens, if not hundreds, of pages of relevant information, including the exact process for consolidating Plaintiffs' FFEL loans and having Plaintiffs' Direct loans forgiven under the PSLF. *See https://www2.ed.gov/fund/grants-*

*college.html?src=pn.*[6]

Indeed, in the FAC, Plaintiffs acknowledge that Great Lakes holds itself out as "***a***" resource that borrowers ***may*** use to evaluate their repayment options. [Doc. No. 24] at ¶ 28. Plaintiffs also acknowledge that Great Lakes offers to "***help***" consumers to explore loan forgiveness. *Id.* at ¶ 27.

Indeed, the very website referenced in the FAC as "evidence" of Great Lakes' alleged failure to disclose relevant information provides a direct link to the DOE's website, which describes the PSLF program in detail. *See id.* at ¶ 29: A screenshot of the relevant portion of the webpage is below:

**Public Service Loan Forgiveness**

If you get a job at a government or not-for-profit organization and repay your loans based on your income, you may qualify for forgiveness of your Direct Loans after 10 years of payments and employment. See StudentAid.gov/publicservice for more information and for a form you can fill out when you start working to receive confirmation that your employment qualifies for the program.

**Note:** Servicing for this program is managed by another federal student loan servicer. If you enroll in Public Service Loan Forgiveness, your eligible loans will be transferred from Great Lakes to that servicer. Also note, you may not receive a benefit for the same qualifying payments or period of service for Teacher Loan Forgiveness and Public Service Loan Forgiveness.

*See https://mygreatlakes.org/educate/knowledge-center/know-your-options-forgiveness.html.* Clicking on the link in the above screenshot takes consumers to a ***federal government*** webpage, which provides information on all of the issues raised in the FAC:

---

[6] "Courts in this District and elsewhere regularly take judicial notice of public records available on the [federal government] website[s] because such document[s] satisfy the requirements [of the Federal Rules of Evidence]." *See*, *e.g.*, *Stanifer v. Corin USA Ltd., Inc.*, 2014 WL 5823319, at *3 (M.D. Fla. Nov. 10, 2014). A court make take judicial notice of such matters on a motion to dismiss without converting the motion into a motion for summary judgment. *Chapman v. Abbott Laboratories*, 930 F.Supp.2d 1321, 1323 (M.D. Fla. 2013) (citing *Horne v. Potter*, 392 Fed.Appx. 800, 802 (11th Cir. 2010)).

Accordingly, Plaintiffs were not (and could not be) "dependent" on Great Lakes for information about the PSLF program. Rather, all necessary information on available repayment and consolidation options was available to them both before and after they took out their student loans. Thus, Plaintiffs cannot establish that Great Lakes was their fiduciary and Count I should be dismissed.

Additionally, Plaintiffs cannot show that Great Lakes "voluntarily assum[ed]" fiduciary duties to them under Florida law. Courts are clear that "one may not . . . *unilaterally* impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary." *Florida Kelly Plantation v. Gilliam, Ltd.*, 2012 WL 13032897, at *5 (N.D. Fla. Sept. 18, 2012) (quoting *Denison State Bank v. Madeira*, 230 Kan. 684, 640 P.2d 1235, 1244 (1982)). The fact that one party unilaterally places trust or confidence in the other is not sufficient to give rise to a confidential relationship; instead, there must be ***some actual mutual recognition, acceptance, or undertaking*** of a fiduciary duty by the other party. *See Am.Honda Motor Co., Inc.*

-15-

*v. Motorcycle Mo. Network, Inc.*, 390 F.Supp.2d 1170, 1179 (M.D. Fla. 2005).

Florida courts have repeatedly held that lenders are not fiduciaries for debtors.[7] *See Breig v. Wells Fargo Bank, N.A.*, 2014 WL 806854, at *2 (S.D. Fla. Feb. 28, 2014); *Keys Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F. Supp. 1437, 1443 (S.D. Fla. 1995) *aff'd sub nom. Keys Jeep Eagle v. Chrysler Corp.*, 102 F.3d 554 (11th Cir.1996); *see also Metcalf v. Leedy, Wheeler & Co.*, 140 Fla. 149, 191 So. 690 (Fla. 1939); *Capital Bank v. MVB, Inc.*, 644 So.2d 515, 518 (Fla. 3d DCA 1994) ("Generally, the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities."). Plaintiffs' FAC does nothing to overcome this presumption.

Nor could they. Courts have repeatedly held that servicers and educational institutions owe fiduciary duties *only* to the federal government, *not* to student borrowers. *See*, *e.g.*, *Moy v. Adelphi Inst., Inc.*, 866 F. Supp. 696, 708 (E.D.N.Y. 1994) ("To find that the school was a fiduciary to the student would then subvert the HEA by allowing, in effect, a private cause of action which this Court has held cannot be had."); *accord Radin*, 2005 WL 1214281, at *14 ("[T]he only fiduciary

---

[7] This also applies to the borrower/loan servicer relationship. *See, e.g., Leal v. Bank of New York Mellon,* 2012 WL 5465978, * 14 (S.D. Tex. Oct. 22, 2012); *Menlove v. Bank of America N.A.,* 2012 WL 4356367, *3 (D. Utah Sept. 24, 2012); *Goyal v. Capital One, N.A.,* 2012 WL 3878114, *2 (N.D. Cal. Sept. 6, 2012); *Aguilar v. Invstaid Corp.,* 2012 WL 2590356, *6 (D. Nev. July 3, 2012); *Jean v. American Home Mortg. Servicing, Inc.,* 2012 WL 1110090, *4 (N.D. Ga. Mar. 30, 2012); *Breedlove v. Wells Fargo Bank, N.A.,* 2010 WL 3000012, *2 (D. Ariz. July 28, 2010); *Corcoran v. Saxon Mortg. Services, Inc.,* 2010 WL 2106179, *4 (D .Mass. May 24, 2010); *Physicians Mut. Ins. Co. v. Greystone Servicing Corp.,* 2009 WL 855648, * 10 (S.D.N.Y. Mar. 25, 2009).

duty created by the HEA is a fiduciary duty to the disbursing governmental agency to see that these funds are properly dispersed.").

Therefore, as a matter of state and federal law, the HEA does not establish a fiduciary duty owed to borrowers. Thus, Plaintiffs cannot establish a fiduciary relationship between them and Great Lakes and, therefore, Count I should be dismissed with prejudice.

### D.    Plaintiffs' Negligence Claim Fails Because Great Lakes Does Not Owe Them a Duty to Disclose

Plaintiffs' negligence claim in Count II of the FAC should also be dismissed because Plaintiffs cannot establish that Great Lakes owed them a tort duty that was breached. "Under Florida law, the question of whether a [negligence] duty is owed is linked to the concept of foreseeability. [Florida courts] have held that duties may arise from four general sources: (1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of a case." *See*, *e.g.*, *Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 28 (Fla. 2d DCA 2011).

First, while Florida law recognizes a duty imposed by legislative enactments and administrative regulations, it only does so if the relevant statute or regulation imposes a duty that is ***owed by a lender or servicer to the borrowers and not to another entity***. *See Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1322–

23 (M.D. Fla. 2015), *aff'd sub nom. Wiand v. Wells Fargo Bank, N.A.*, Inc., 677 F. App'x 573 (11th Cir. 2017).

In *Wiand*, the plaintiff attempted to sue Wells Fargo for negligence, arguing that federal banking laws and regulations "give rise to a duty of care" owed by Wells Fargo to its banking customers. *Id.* at 1322-23. The court rejected that theory, holding that the "federal banking statutes" at issue "impose duties on banks [that] extend to the United States, not [the] bank's customers." *Id.* Accordingly, the court dismissed the negligence claim.

Here, again, Plaintiffs rely on the HEA to establish the "duty of care" supporting their negligence claim. The HEA and theory of negligence proffered by Plaintiffs, however, are similar to the banking statutes and theory of liability at issue in *Wiand*. As discussed above, the HEA is designed to impose a fiduciary obligation on lenders and servicers ***in favor of the DOE – not student borrowers***. *See*, *e.g.*, *Moy*, 866 F. Supp. at 708; *Radin*, 2005 WL 1214281, at *14; *accord Kozaczek v. New Hampshire Higher Educ. Assistance Found.*, 2014 WL 3640779, at *5 (D. Vt. July 21, 2014) ("[B]ecause federal student loan regulations under the HEA do not exist for the direct benefit of the students . . . , they cannot form the basis of a negligence action."); *Brown,* 2007 WL 2296543, at *1–2. Because loan servicers' duties are to the DOE not borrowers, Great Lakes owed no state law "duty of care" to Plaintiffs under the "legislative enactments or administrative

regulations" prong of the "duty" analysis.

Second, except for Plaintiffs' general citation to the HEA, the FAC is devoid of any other federal or Florida authorities supporting their claim for a negligence duty. Based on its own research, Great Lakes has found no "judicial interpretations of [other] enactments or regulations [or] other judicial precedent" supporting Plaintiff's negligence claim under Florida law. *See Kaman*, 100 So. 3d at 28. Plaintiffs have pointed to none. *See*, *generally* [Doc. No. 24]. Therefore, Florida does not recognize a "duty of care" in favor of Plaintiffs.

Finally, Florida courts recognize a "duty of care" if the "general facts of [the] case" warrant it. *See Kaman*, 100 So. 3d at 28. However, the Eleventh Circuit previously affirmed the dismissal of a Florida law negligence claim under facts analogous to these. Specifically, in *Anyakora*, *supra*, the district court "dismissed Anyakora's HEA claims . . . for failure to state a claim because . . . the HEA . . . does not provide for a private cause of action, either express or implied." 255 Fed. App'x at 458. Moreover, the district court "dismissed [the plaintiff's] 'peripheral' theories of 'fraud, racketeering, discrimination, negligence, denial of due process, § 1983, etc.,' based on its conclusion that these were simply HEA violations pled in other terms, and therefore [were] precluded under *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1220 (11th Cir. 2002)." The Eleventh Circuit summarily affirmed the district court's dismissal on this basis.

114073297.1

Here, Plaintiffs' case is indistinguishable from *Anyakora*. In both, the plaintiffs sought to hold a student loan servicer liable under state tort law for the purported violation of a "duty of care" allegedly imposed by the HEA. However, because the HEA does not provide for a private right of action against a participant in the federal student loan program, all state-law claims deriving from a purported violation of that statute must fail. This is because the HEA cannot be used to establish an actionable state-law "duty of care;" otherwise, the federal enforcement scheme developed by Congress (which excludes private enforcement) would be a nullity. Because Eleventh Circuit precedent precludes the particular "facts of [this] case" from giving rise to a "duty of care" owed to Plaintiff, her negligence claim must be dismissed. *Anyakora*, 255 Fed. App'x at 458.

### E.   Plaintiffs' Unjust Enrichment Claims Fail for Two Reasons

"The elements of a cause of action for unjust enrichment[8] are: (1) plaintiff has conferred a benefit on the defendant . . .; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *See*, *e.g.*, *Extraordinary Title Servs., LLC v. Florida Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009).

"Contracts implied in law are obligations imposed by law to prevent unjust

---

[8] "[A]n unjust enrichment claim is essentially another way of stating a traditional tort claim (*i.e.*, if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched.)" *Pennsylvania Employees Ben. Tr. Fund v. Astrazeneca Pharm. LP*, 2009 WL 2231686, at *6 (M.D. Fla. July 20, 2009).

enrichment." *Rite-Way Painting & Plastering, Inc. v. Tetor*, 582 So. 2d 15, 17 (Fla. 2d DCA 1991) (citing *Nursing Care Services, Inc. v. Dobos*, 380 So.2d 516 (Fla. 4th DCA 1980)). Thus, a claim for breach of an implied-at-law contract "is often used interchangeably with unjust enrichment." *Greenhorne & O'Mara, Inc. v. Consol. Elec. Contractors & Engineers, Inc.*, 2010 WL 750343, at *1 (N.D. Fla. Mar. 3, 2010).

"The fiction [of unjust enrichment] was adopted to provide a remedy where one party was unjustly enriched, [and] where that party received a benefit under circumstances that made it unjust to retain it without giving compensation." *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997). "The essential elements for an action under this theory are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Tetor*, 582 So. 2d at 17.

Plaintiff's unjust enrichment / implied-in-law-contract claims must fail for two separate reasons: First, Plaintiffs did not confer any benefit on Great Lakes. As Plaintiffs admit, Great Lakes *services* the loans for DOE. *See* FAC, Doc. No. 24, at ¶¶ 25-26. Thus, any "principal, interest, and fees" paid by Plaintiffs are paid to DOE, not Great Lakes. *Id.* at ¶¶ 82-86, 87-91; Servicing Contract Between DOE

and                Great                Lakes,                *available*                *at*
https://www2.ed.gov/policy/gen/leg/foia/contract/greatlakes-061709.pdf                (last
visited Jan. 24, 2018).[9] So, even if Plaintiffs are paying more than they would if
their loans had been forgiven, those payments do not benefit Great Lakes. Thus,
Great Lakes was not unjustly enriched by any payments made by Plaintiffs and
Plaintiffs' unjust enrichment claims must fail as a matter of law.

Second, Plaintiffs' have not alleged facts establishing that it would be
inequitable for Great Lakes to retain any principal, interest, or fees, it received
from servicing their loans. Plaintiffs admit that they took out the loans they are
now repaying. *See* FAC, Doc. No. 24, at ¶¶ 39-41, 49. They admit that their loans
were not forgiven. *See id.* at ¶¶ 44, 54. They admit that their loans were not eligible
for forgiveness. *Id.* And, Great Lakes has explained how, even accepting Plaintiffs'
allegations as true, it did nothing to prevent Plaintiffs from obtaining forgiveness.
Motion pp. 14-15, *supra*. Nor could it. The DOE administers the PSLF program,
not Great Lakes. *Id.* Because Plaintiffs have not and cannot allege any facts to
support the "inequity" element of their claim, it must be dismissed.

### F.    Plaintiffs' FCCPA Claim is Conclusorily Pled

The Plaintiffs' FCCPA claim must also be dismissed because they have not
alleged ***plausible facts*** to support their claim. Specifically, Plaintiffs assert claims

---

[9]        *See* footnote 7, *supra.*

114073297.1

under FCCPA § 559.72(9). In pertinent part, the FCCPA provides that, in collecting consumer debts, no person shall:

> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

Fla. Stat. § 559.72 (9).

To establish a violation under Section 559.72(9) of the FCCPA, "it must be shown that a legal right that did not exist was asserted and that the person had actual knowledge that the right did not exist." *Pollock v. Bay Area Credit Serv., LLC*, 2009 WL 2475167, at *9 (S.D. Fla. Aug. 13, 2009).

Moreover, "a party must allege knowledge or intent by the debt collectors in order to state a cause of action." *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1371-73 (S.D. Fla. 2011); *see also Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1309 (S.D. Fla. 2009) (dismissing FCCPA claim where the plaintiff failed to plead the defendants had knowledge that they were pursuing a debt to which they were not legally entitled). Under Florida law, "the use of the word 'knows' requires actual knowledge of the impropriety or overreach of a claim." *In re Cooper*, 253 B.R. 286, 290 (N. D. Fla. 2000).

Additionally, courts have held that a "demand for payment upon a legitimate debt will not support a claim under [the FCCPA]." *See Locke v. Wells Fargo Home Mortg.*, 2010 WL 4941456, *3 (S.D. Fla. 2010) (holding that nothing in the

FCCPA prevented Wells Fargo from attempting to collect on the outstanding amounts owed by the plaintiff for their mortgage loan). An example of a Section 559.72(9) violation includes those cases where the defendant is attempting to collect on a debt that does not exist. *See Pollock*, 2009 WL 2475167, at \*9.

Based on a fair reading of the FAC, it is clear that Plaintiffs fail to satisfy the essential elements of their FCCPA claim. Specifically, Plaintiffs have not demonstrated that Great Lakes is trying to collect an invalid debt from them. Because "[Plaintiffs'] . . . [FAC] only contains conclusory allegations, and is not supported by the facts necessary to establish [their] case," the Court must dismiss these claims under *Twombly* and *Iqbal*. *See Reese*, 686 F. Supp. 2d at 1310.

### G.    Plaintiffs' Claims Should be Limited to a Florida-Only Class.

Alternatively, in the event that all of Plaintiffs' claims are not dismissed, their proposed ***nationwide*** class cannot be maintained under the Supreme Court's recent decision in *Bristol-Myers Squibb v. Super. Ct. of Cal.*, 582 U.S. ——, 137 S. Ct. 1773 (2017). There, the Supreme Court held that courts do not have specific personal jurisdiction over defendants with respect to claims by non-residents of the forum state. *Id.* at 1781-82. Thus, pursuant to F.R.C.P. 12(b)(1), Plaintiffs' class claims pertaining to any non-Florida residents must be dismissed for lack of personal jurisdiction.

In *Bristol-Myers Squibb*, the United States Supreme Court held that an out-

of-state defendant did not have to defend against claims by non-California residents in a mass action lawsuit brought in California state court. *Id.* at 1781-82. There, the nonresident plaintiffs alleged no connections with California, and there was no link between their claims and the forum (except that the claims mimicked those of the in-state California plaintiffs). *Id.* In its decision, the Supreme Court noted that the non-resident plaintiffs did not "claim to have suffered harm" in California, and that "all the conduct giving rise to [their] claims occurred elsewhere." *Id.* Accordingly, the Supreme Court held that the Fourteenth Amendment's Due Process Clause prohibits state courts from exercising personal jurisdiction over a non-resident defendant for claims arising outside the forum state and asserted by non-resident plaintiffs. *Id.*

This holding applies equally to federal courts because the reach of a federal courts' personal jurisdiction is tied expressly to that of a state court in the state in which the federal court sits. *See* Fed. R. Civ. Pro. 4(k)(1) (limiting the reach of a federal court's personal jurisdiction to that of a state court of the state in which the federal court sits); *see also Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203-04 (11th Cir. 2015) (explaining that a federal court's personal jurisdiction over individuals and entities is limited by state long-arm statutes and the Constitution's Due Process Clause). Thus, *Bristol-Myers Squibb*'s holding applies equally to any putative class member who alleges a claim against Great Lakes in

federal court, where, as here, the claim has no connection to the forum state, and where Great Lakes is not a resident of the forum state. *Bristol-Myers Squibb*, 137 S. Ct. at 1782 ("The relevant plaintiffs are not California residents and do not claim to have suffered harm in that State. In addition, . . . all the conduct giving rise to the nonresidents' claims occurred elsewhere. It follows that the California courts cannot claim specific jurisdiction.").[10]

*Bristol-Myers Squibb* applies equally to class actions as to mass actions. If due process requires a connection between claims, a defendant's forum activity, the underlying controversy, and the forum state, then due process overrides a countervailing statute or federal rule. *Cf. United States v. King*, 2009 U.S. Dist. LEXIS 69673, at *6 (D. Idaho Aug. 7, 2009) (holding that the requirements of the Due Process Clause of the Fifth Amendment override conflicting restrictions set forth in statutes and the federal rules); *Jackshaw Pontiac, Inc. v. Cleveland Press Pub. Co.*, 102 F.R.D. 183, 196 (N.D. Ohio May 24, 1984) ("[I]nvocation of the magical words 'class action' will not suffice to override the requirements of due process and common sense . . . .").

Indeed, in her dissent, Justice Sotomayor acknowledged that, because of its sweeping language, the *Bristol-Myers Squibb* decision provides a good-faith basis

---

[10] Moreover, because this case does not assert a claim involving a federal question, "the court [must] exercise[e] diversity jurisdiction and look[] to [state] law, [at which point] *Bristol-Myers Squibb* [unequivocally] applies . . . ." *LDGP, LLC v. Cynosure, Inc.*, 2018 WL 439122, at *2 (N.D. Ill. Jan. 16, 2018) (citing *McDonnell v. Nature's Way Prods., LLC*, 2017 WL 4864910, at *4 n.7 (N.D. Ill. Oct. 26, 2017)).

114073297.1

on which to apply the holding in the federal class action context. *See Bristol-Myers Squibb*, 137 S. Ct. at 1788-89 ("[T]he upshot of today's opinion is that plaintiffs cannot join their claims together and sue a defendant in a State in which only some of them have been injured. That rule is likely to have consequences far beyond this case.") (Sotomayor, J., dissenting).

Seizing on this language, other federal courts have applied *Bristol-Myers Squibb* in federal class actions. *See*, *e.g.*, *In re Dental Supplies Antitrust Litig.*, 2017 U.S. Dist. LEXIS 153265 (E.D.N.Y. Sept. 20, 2017); *Spratley v. FCA US LLC*, 2017 U.S. Dist. LEXIS 147492 (N.D.N.Y. Sept. 12, 2017); *see also LDGP, LLC v. Cynosure, Inc.*, 2018 WL 439122, at *3 (N.D. Ill. Jan. 16, 2018) (applying *Bristol-Myers Squibb* to limit a nationwide class action, observing that, "[t]hough the nonresidents' claims are similar to those of resident plaintiffs, the difference that plaintiffs point out is fundamental: the events that lead to the nonresidents' claims took place outside of Illinois.").

For instance, in *Spratley*, "eight different individuals, each of whom separately purchased an allegedly defective vehicle made by Chrysler[,] . . . allege[d] that Chrysler concealed a known safety defect in the tire pressure monitoring systems . . . of some of [its] most popular vehicles[.]" 2017 U.S. Dist. LEXIS 147492, at *2. The "[p]laintiffs [were] residents of New York, New Jersey, Michigan, Ohio, and Massachusetts[,]" and only one of them "purchased a car in

New York." *Id.* at *4. The plaintiffs "assert[ed] four different classes: a New York class, a New Jersey class, an Ohio class, and a Michigan class." *Id.*

As a Delaware corporation, with its principal place of business in Michigan, Chrysler argued that the six named plaintiffs, who "[were] not New York residents, and . . . did not purchase their allegedly defective vehicles in New York," should be dismissed from the case because the federal district court could not exercise specific jurisdiction over those plaintiffs' claims. *Id.* at *17-18. In response, the putative class representatives argued that "the out-of-state [p]laintiffs' claims need not arise from Chrysler's New York activities because the out-of-state [p]laintiffs' claims are the same as the New York [p]laintiffs' claims and arise out of Chrysler's nationwide activity." *Id.* However, relying on *Bristol-Myers Squibb*, the district court dismissed the out-of-state class representatives from the case. *Id.*

In dismissing those plaintiffs, the court noted that "[it] may only exercise specific jurisdiction where there is an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Spratley*, 2017 U.S. Dist. LEXIS 147492, at *19 (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1781). The district court further observed that, in *Bristol-Myers Squibb*, "the [Supreme] Court found specific jurisdiction lacking because there was no connection between [Bristol-Myers Squibb]'s California contacts and the nonresidents' claims." *Id.* Thus, because the out-of-state plaintiffs

failed to demonstrate a "connection between their claims and Chrysler's contacts with New York," like the plaintiffs in *Bristol-Myers Squibb*, the *Spratley* court held that it "lack[ed] specific jurisdiction over the out-of-state [p]laintiffs' claims." *Spratley*, 2017 U.S. Dist. LEXIS 147492, at *19-20.

Likewise, in *In re Dental Supplies Antitrust Litig.*, (hereinafter, "*Dental Supplies*"), the plaintiffs (a group of dental practices and dentists) brought a putative class action in federal court against "the three largest distributors of dental supplies and equipment in the United States" and "a minor distributor" for alleged price fixing. 2017 U.S. Dist. LEXIS 153265, at *13. The minor distributor "ha[d] no New York presence and d[id] not transact business" there; however, the company "made some sales to New York dentists" through a separate distributor, called a "group purchasing organization." *Id.* at *12-13, 33-38. Finding *Bristol-Myers Squibb* "instructive," the New York federal district court dismissed the minor distributor from the class action because "plaintiffs' submissions fail[ed]" to establish "a direct 'connection between the forum and the specific claims'" against the minor distributor. *Id.* at *37-38.

As in *Spratley*, Plaintiffs seek to certify a class action against Great Lakes that will consist of class members from several states – not just Florida. And, as in *Spratley* and *Dental Supplies*, those non-Floridian class members will be unable to demonstrate a "connection between their claims and [Great Lakes'] contacts with

-29-

[Florida]" or "a direct connection [with] the forum [of Florida]." *See Spratley*, 2017 U.S. Dist. LEXIS 147492, at *19-20; *Dental Supplies*, 2017 U.S. Dist. LEXIS 153265, at *37-38; *accord Bristol-Myers Squibb*, 137 S. Ct. at 1782 ("The relevant plaintiffs are not California residents and do not claim to have suffered harm in that State. In addition, . . . all the conduct giving rise to the nonresidents' claims occurred elsewhere. It follows that the California courts cannot claim specific jurisdiction."). Thus, this Court lacks personal jurisdiction over those class members and Plaintiffs' claims as to those class members must be dismissed.

Limiting specific personal jurisdiction in this manner strikes a fair balance between the interests of any putative class plaintiff and Great Lakes, as the Supreme Court noted in its opinion. *See Bristol-Myers Squibb*, 137 S. Ct. at 1783. For example, the named Plaintiffs may continue pursuing their individual claims against Great Lakes (assuming this the FAC is not dismissed entirely, as it should be), and they may be able to pursue a Florida-only class action in this Court (assuming both Plaintiffs meet all other Rule 23 requirements). *See id.* Further, potential class members outside of Florida may pursue their claims "in a [class] action in the [states and courts] that have general jurisdiction over" Great Lakes – *e.g.*, Wisconsin. *See id.* Moreover, "the plaintiffs who are residents of a particular State . . . could probably sue together in their home States." *Id.*

Because this Court lacks personal jurisdiction over Great Lakes with respect

to the claims of non-Floridians, Plaintiffs' class claims (to the extent they are not dismissed entirely) must be dismissed as to all non-Florida residents.

## IV.   CONCLUSION

For all these reasons, the FAC should be dismissed *with prejudice*.

### RULE 7.1(F) CERTIFICATE OF COMPLIANCE

I certify that this memorandum complies with the requirements of Local Rule 7.1(F) and contains 7,704 words.

**DATED:**  February 28, 2018                Respectfully submitted,

/s/ Christopher Paolini
Christopher Paolini (FL Bar No. 669199)
Carlton Fields Jorden Burt, PA
450 S. Orange Avenue - Suite 500
Orlando, Florida 32801-3370
Telephone: 407-244-8253
Facsimile:  407-648-9099
Email: cpaolini@carlstonfields.com

Theodore R. Flo (D.C. Bar Number 979374)
(admitted *pro hac vice*)
Ballard Spahr LLP
1909 K Street NW – 12th Floor
Washington, D.C.  20006
Telephone: 202-661-2200
Facsimile:  202-661-2299
Email: flot@ballardspahr.com

*Attorneys for Defendant Great Lakes Higher Education Corp.*

## **CERTIFICATE OF SERVICE**

I certify that on this 28th day of February 2018, the foregoing was electronically filed via CM/ECF in the United States District Court for the Northern District of Florida, and a copy of the foregoing was electronically served by the Court on all parties of record.

/s/ Christopher Paolini
Attorney

114073297.1