# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

AMANDA LAWSON-ROSS
and TRISTIAN BYRNE,

    *Plaintiffs,*

V.                              CASE NO. 1:17-CV-253-MW/GRJ

GREAT LAKES HIGHER
EDUCATION CORP.,

    *Defendant.*

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This is a case against a student loan servicer. This Court has considered, without hearing, Defendant Great Lakes Higher Education Corp.'s ("Great Lakes") motion to dismiss. ECF No. 26. The motion is **GRANTED**.

### I

Like millions of Americans, Plaintiffs Amanda Lawson-Ross and Tristian Byrne ("Plaintiffs") carry the heavy albatross of student loans. Like thousands of young people, Plaintiffs were drawn to a career of public service and a desire to better themselves and others, which, in modern American society, requires borrowing thousands of dollars to finance an education. ECF No. 41, at ¶¶ 40 & 48. And like many borrowers, Plaintiffs sought participation in the federal Public Service Loan Forgiveness program ("PSLF"), which

forgives eligible student-loan debt after a borrower works in an eligible job for ten years. *Id.* at ¶¶ 30–34.

Great Lakes is a student loan servicer that helps borrowers manage their accounts, process payments, assist in learning about and enrolling in repayment plans, and communicating with borrowers. *Id.* at ¶¶ 25–26. Great Lakes's website, among other things, reminds borrowers that "[r]emember, we're here to serve you." *Id.* at ¶ 29.

Not so, Plaintiffs allege. To qualify for PSLF loan forgiveness, borrowers must have taken out loans from the William D. Ford Direct Loan Program ("Direct Loans"), made 120 qualifying payments, enrolled in a qualified repayment plan, and worked full-time for a qualified employer. *Id.* at ¶¶ 33–34.

Dr. Lawson-Ross took out student loans—but not Direct Loans—to finance her pursuit of a master's and doctorate degree in counseling psychology. *Id.* at ¶¶ 39–40. She regularly contacted Great Lakes "with the purpose of ensuring that she was on track to receive the benefits of PSLF." *Id.* at ¶ 40. She was "repeatedly and explicitly told by Great Lakes representatives that she was on track to benefit under" PSLF. *Id.* at ¶ 41. She first became obligated under her student loans in 2007. *Id.* at ¶ 40. In July 2017, she was told she was not eligible for PSLF loan forgiveness because the majority of her loans were not Direct Loans. *Id.* at ¶ 44.

Ms. Byrne has an associate's degree in criminal justice. *Id.* at ¶ 48. She borrowed approximately $25,000 to finance her education. *Id.* In January 2016, Byrne learned about PSLF and sought more information from Great Lakes about this program. *Id.* at ¶ 49. Great Lakes informed Byrne that once she made 120 payments, the remaining debt would be forgiven. *Id.* at ¶¶ 49–51. In September 2017, however, Great Lakes informed Byrne she was not eligible for PSLF because she did not have Direct Loans. *Id.* at ¶ 54. Had both Lawson-Ross and Byrne known of their ineligibility for PSLF loan forgiveness earlier, they would have taken corrective measures. *Id.* at ¶¶ 46 & 55.[1]

This Court has diversity jurisdiction in this matter. Plaintiffs bring five state law claims against Great Lakes: breach of fiduciary duty, negligence, unjust enrichment, breach of implied-in-law contract, and violation of the Florida Consumer Collection Practices Act. Great Lakes moves to dismiss on several bases. First, it alleges the Higher Education Act preempts Plaintiffs' claims. Second, it claims Plaintiffs have failed to exhaust administrative remedies through the Department of Education. Finally, Great Lakes argues that Plaintiffs have failed to state a claim on the five state law causes of action.

Because the Higher Education Act preempts Plaintiffs' claims, this Court need only address the preemption issue.

---

[1] Plaintiffs allege they are not alone. The Consumer Financial Protection Bureau has received thousands of complaints relating to student loan servicers, many of which were about Great Lakes. ECF No. 24, at ¶¶ 57–62.

## II

Federal law is "the supreme Law of the Land." U.S. CONST. art. VI, cl. 2. When federal and state laws conflict, "the conflicting state law provisions [are] without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). On the other hand, there is a presumption against preemption in those areas in which states have historically exercised their police powers. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) ("[W]e start with the assumption that the historic police powers of the States were not to be superseded by [a federal law] unless that was the clear and manifest purpose of Congress."). Unfair business practices are among those areas "traditionally regulated by the States." *California v. ARC America Corp.*, 490 U.S. 93, 101 (1989).

Even so, "'[t]he purpose of Congress is the ultimate touchstone' of preemption analysis." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978)). Congressional intent can be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977).

The federal law at issue here states that "[l]oans made, insured, or guaranteed pursuant to a program authorized by title IV of the Higher Education Act of 1965 shall not be subject to any disclosure requirements of any State law." 20 U.S.C. § 1098g. What "disclosure requirements"

4

encompasses has flummoxed district courts across the country. This Court finds persuasive those courts that have concluded that Congress explicitly intended that state law and common law claims such as those at issue here fall within "disclosure requirements"—and are therefore expressly preempted by federal law.

Plaintiffs are bringing common law and state law claims relating to misrepresentation in their loan repayment statuses against Great Lakes. They are not the first plaintiffs to bring such claims against a student loan servicer, but no authority binds this Court. Many courts have held that such claims fall within the ambit of Section 1098g and, as a result, were expressly preempted. In the only circuit court opinion directly on Section 1098g, the Ninth Circuit determined that plaintiffs' "misrepresentation claims are improper-disclosure claims." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010). "In this context, the state-law prohibition on misrepresenting a business practice 'is merely the converse' of a state-law requirement that alternate disclosures be made." *Id.* at 943 (citing *Cipollone*, 505 U.S. at 527). The court held that express preemption prevented the plaintiffs' claims from moving forward.

Some district courts have adopted reasoning to *Chae. See, e.g.*, *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 2017 WL 6501919 (S.D. Ill. Dec. 19, 2017); *see also Linsley v. FMS Inv. Corp.*, 2012 WL 1309840, 2012 WL 1309840 (D. Conn. Apr. 17, 2012). Other courts, meanwhile, have determined that common

5

law claims similar to Plaintiffs' fall outside the preemption provision. *See, e.g.*, *Daniel v. Navient Sols.*, LLC, 2018 WL 3343237 (M.D. Fla. June 25, 2018); *see also Genna v. Sallie Mae, Inc.*, 2012 WL 1339482 (S.D.N.Y. Apr. 17, 2012).

The preemption issue is further complicated by a Department of Education interpretation issued earlier this year. Fed. Preemption and State Reg. of the Dep't of Education's Fed. Student Loan Programs and Fed. Student Loan Servicers, 83 Fed. Red. 10619-01, 2018 WL 1240656 (Mar. 12, 2018) ("the Interpretation"). The Interpretation aimed to clarify the Department of Education's views on states' "new regulatory requirements" on student loan servicers and the Department's belief that states' regulations are preempted by federal law. *Id.* at 10619. This Court sought—and received—additional briefing on the Interpretation. *See* ECF Nos. 34, 35, 49 & 40.

The Eleventh Circuit has not considered the preemptive scope of Section 1098g. In the absence of binding authority, this Court finds the Interpretation and other judges' conclusions that Section 1098g preempts the types of common law and state law claims at issue in this case persuasive.

### III

Federal laws and federal regulations impose detailed and complex disclosure requirements on student loan servicers. *See, e.g.*, 20 U.S.C. § 1078-3(b)(1)(F); 20 U.S.C. § 1083(e)(1)–(2); 34 C.F.R. 668.41(b); 34 C.F.R. 674.31; 34 C.F.R. 674.41; 34 C.F.R. 674.42; *and* 34 C.F.R. 682.205. For example, a servicer

must disclose the balance of a loan, the interest of a loan, the repayment schedule for the loan, options for loan consolidation or refinancing, and the opportunity to pay off the loan without penalty. 34 C.F.R. 674.42(a).

"[P]reemption cannot be avoided simply by relabeling an otherwise-preempted claim." *Chae*, 593 F.3d at 943. Plaintiffs argue that their claims are not relabeled preempted claims but claims of affirmative misrepresentation. ECF No. 29, at 13. Plaintiffs cite *Genna* as a helpful pathway around Defendant's preemption argument. "There is nothing in the [Higher Education Act] that standardizes or coordinates how a customer service representative of a third-party loan servicer . . . shall interact with a customer . . . in the day-to-day servicing of his loan outside of the circumstance of pre-litigation informal collection activity," the district judge wrote while rejecting the loan servicer's preemption argument. *Genna*, 2012 WL 1339482 at *8.

The Interpretation seems to directly address this line of reasoning. There, the Department of Education interprets Section 1098g's "disclosure requirements" language "to encompass [loan servicers'] informal or non-written communications to borrowers." 83 Fed. Reg. at 10621. Additionally—and importantly—the Interpretation explains that the preemptive scope of Section 1098 extends to "State servicing laws attempt[ing] to impose new prohibitions on misrepresentation *or the omission of material information.*" *Id.*

7

This language directly applies to Defendant's alleged omissions to Plaintiffs in the form of Plaintiffs' PSLF status.

The Interpretation is persuasive and due deference under *Skidmore*. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Because the Interpretation is one interpreting a federal statute, the more deferential *Auer* deference does not apply. *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (explaining that an agency's interpretation of its own regulation is controlling unless plainly erroneous). Even so, the Interpretation is well-reasoned and sensible. It articulates unique federal interests in controlling student loan servicers through government contracts that advance the comprehensive disclosure requirements detailed in federal regulations.

This Court finds the reasoning in *Nelson* persuasive; namely, "[c]onstruing the statutory framework in conjunction with the plain meaning of the word 'disclosure,' it appears Congress intended § 1098g to preempt any state law requiring lenders to reveal facts or information not required by federal law." *Nelson*, 2017 WL 6501919 at *4. This case, in essence, is about Great Lakes's failure to provide accurate information—disclosure, in other words. While federal laws and regulations do not explicitly require loan servicers to disclose what repayment program a borrower is in, the statutory framework requires comprehensive disclosure. Accordingly, a borrower's repayment program is the type of information not precisely required by federal

8

law but that nevertheless falls within the ambit of Section 1098g's preemption language. Claims that a servicer provided inaccurate information is no different than a claim that Great Lakes failed to make proper disclosures.

## IV

Plaintiffs should be applauded and commended for their success and for pursuing careers in public service. Moreover, this Court is troubled that this preemption may permit loan servicers' misrepresentation without borrowers benefitting from full remedies. It is only with deep regret that this Court **GRANTS** Defendant's motion.

Accordingly,

**IT IS ORDERED:**

1. The Clerk is directed to enter judgment stating "Plaintiffs' claims are dismissed."

2. The Clerk shall close the file.

**SO ORDERED on September 20, 2018.**

<u>s/Mark E. Walker</u>
**Chief United States District Judge**